23-12518, Prime Property and Casualty Insurance Company v. Kepali Group, et al. May it please the Court, I'm Ronald Kammer on behalf of the Appellant Prime Property and Casualty Insurance Company. Your Honor, it's Prime's position that the District Court's decision must be reversed, as no premium was ever paid to add the 3985 Toyota to the Prime policy. No court, either in Florida or anywhere, has ever extended coverage to an after-acquired auto after the 30-day grace period where no premium was paid within a reasonable period of time. The District Court's decision... Their argument is, in part, that Prime never sought to cancel any aspect of the policy for nonpayment, and that that refutes, if not in whole, at least in part, your argument. Two things about the cancellation, Your Honor. First, that argument was never raised below, number one. But more importantly, should the Court consider that argument, the statute that they cited talks about canceling a policy for nonpayment of premium. But more importantly, under the facts here, Your Honor, is because of what Brown did, and it's undisputed that Brown never sent the quote to add the 3985 Toyota to Capali. As a result of Brown not sending that quote, Prime never received a premium, but never received the signed quote to add the 3985. So, as we argued in the brief, that if my client didn't even know because they didn't get anything back, all the quote is under the case law, and specifically the Davis, is an offer to provide insurance. Until that quote is returned, there's no contract. So, in terms of cancellation, to address your question, Judge Jordan, number one, it's a new argument on appeal. Two, the statute cited in the brief applies to policies not removing a vehicle from the policy. And more importantly, if your client doesn't know that the vehicle was to be added, then what is there to cancel? And where the cancellation argument comes from is the key case from the 11th Circuit, but the key case is different because in the key case, there was notice directly to Allstate that they wanted the car to be covered and a premium was paid. So, the premium was paid, Allstate was aware of that, and that's why the cancellation argument really has no merit here. But returning to the trial court's order, the trial court's order said that towards the end, is to be clear, this does not mean that no premium may be charged or that the coverage is free. That's exactly from the court's opinion. It only means that under the plain terms of Section 1B2 of the policy, paying the premium was not a condition precedent to continue coverage beyond the 30-day grace period. That part of the district court's opinion, respectfully, is incorrect because under Florida law, and again, coverage, the court recognized that coverage is not for free, but the court forgot about a very important point. And that is where a contract does not specify the time for payment, the law infers that it will take place within a reasonable period of time, and that's the independent mutual and finance company case. And the case goes on to say, simply because a contract is unclear as to when payment must be made, does not relieve the party of an obligation to make payment, where the agreement does not specify the time for payment, or provides for an indeterminate or indefinite time, the law implies that the payment will be made within a reasonable period of time. So what do we have in this case? Capali didn't pay the premium within 30 days, didn't pay it for another 30 days, didn't pay it before the accident, didn't pay it after the accident, and didn't pay it before the end of the policy period. And while no Florida case has specifically addressed this precise question, in the context of other grace period cases, here's what first the Robitaille, it's a decision from the third district held, and it was a very similar after acquired auto provision. And again, the purpose of the 30 day provision is to provide a brief or interim coverage to allow a policyholder to obtain insurance. And what the Robitaille case says is the following, that there was immediate coverage for 30 days of notice to the insurer, in order to permit the insurer or policyholder, the insurer to adjust the premium accordingly to reflect the changes in the risk assumed. So again, if you go back to the policy itself, the policy talks about there being coverage for scheduled autos for which a premium is shown. So, when you purchase an auto, the condition that must be met, is you provide notice, because during that initial 30 day period, the coverage during the grace period is automatic. But this accident happened nine, approximately nine weeks after the vehicle was purchased, and therefore the conditions subsequent, which was the payment of the premium, never occurred. How, I'm going to ask you just a question for my own edification. The district court ruled on duty to defend. Correct. Right, it left the indemnification issue for another day. Also correct. What is the status? Is the underlying case still ongoing? Or is that completed? Or what's going on with that? My understanding, and I apologize to the court for not checking the docket, in the last month or so, was that case was still pending. But if I'm wrong about that, someone can correct me. But that's my understanding that that case is not. But of course, Your Honor, the corollary, if this court reverses and enters judgment in favor of prime because the court misinterpreted the after acquired auto provision, then judgment should be entered, judgment should be reversed with instructions to enter judgment in favor of prime. But again, I wanted to go back, if I could, to the Kimball case. The Kimball case was a Florida Supreme Court case which talked about a grace period in the context of a group health policy. And in Kimball, the court noted that the grace period merely extended an opportunity to pay the premium. And during the grace period, the policy remained in force on the theory that the cost of caring insurance ultimately would be paid, and it was not contemplated under the provisions of that policy, like the provisions of the prime policy, that coverage would be afforded without compensation. I'm trying to simplify things, but that's what's on my mind. Your position is, you can correct me if I've misstated it, your position is that whether you consider payment to be a condition precedent or a condition subsequent, you can't have coverage in this scenario when no payment was made at all. That is correct because the accident happened after the 30-day grace period. I think what's important when you look at the case law in this state and other states, when you talk about the after-acquired provision, is that the coverage in those cases, and again, our facts are a little bit different, I'll address that in a moment, but coverage is automatic during that 30-day period and only for that 30-day period in order to allow the insured to secure coverage for a newly acquired or after-acquired auto. What makes our case a little bit different in talking about the course of dealing with this is we look at first endorsement number four, which was to add the two Mercedes, and then the quote which was never sent by Brown, and that's the reason why we're here today, never sent by Brown to their customer, Capali, informed Capali, so in other words, the Friday before, Capali gets the quote in endorsement number four which says, and if I can just refer to my notes for a second, it says that basically that you have to return the quote and pay the premium for coverage to be in effect, and again, that never happened because of what Brown did, so our argument here, in addition to the condition subsequent not being met, is that the condition precedent was also not met because in this case, if you go back to the policy, we made this argument in several spots, Your Honor, says that you must tell us, which means that you actually want to have coverage extended for the auto, and until the only communications here were because of what Brown did, we never received quote number five back, signed, which indicated that they wanted to have actual coverage, and that's going back to the Davis case. I see that my time is up. I have a curiosity. Sure. Is Brown a general insurance agent who obtained insurance coverage from numerous places? Right, yes, and Your Honor, the best evidence of that is keep in mind that when the original quote came in, the original intent was to have the three, again, through Brown, the 3985 Toyota, was to be on progressive, so the district court looked at the facts, and what's important here is two things. Number one, the judge correctly found under the law that for the purpose of procuring insurance, Brown was the agent of Capali, but the court also found that Capali exceeded, excuse me, that Brown misspoke, I apologize, that Brown exceeded its authority. Another reason why we're here today is because on the same time, that critical time period, contrary to the agency agreement, Brown did two things. They created their own ID cards and sent it to Capali and created a certificate of insurance misrepresenting the coverage under the policy. So Your Honor, not only was, to answer your question directly, that under Florida law, and I would refer the court to the cases we cited in the brief and in the district court's order, was Brown the agent of Capali for the purposes of securing insurance, but they exceeded their authority, and for those two reasons, we're not bound. And as we argued in the brief, how could we be bound, if they're the agent of Capali, how could the knowledge of what Brown did be implied to my client? It simply can't. For that additional reason, the court order should be dismissed. I would like to reserve the rest of my time for rebuttal if the court has no further questions. All right, thank you very much, Mr. Cameron. You're welcome. Mr. Graham. Good morning, please, the court. My name's Keith Graham. I represent the owner of the vehicle and the driver of the vehicle, two of the three appellants. I'm going to speak for 10 minutes. We've agreed that Melissa Murphy, counsel for Brown, will follow me and take five minutes.  With respect to the facts and timeline, I want to... Before you get there... Sure. I don't know this issue of Florida law. We get so many insurance cases that the head spins, but I don't know the answer to this issue under Florida law, but it seems odd that in a scenario like this, Capali would get coverage that it's never paid for. That just seems odd. It's one thing to say, you had to pay by this date or you had to pay by that date or you can excuse a late payment or whatever, but it just seems odd. Maybe that's what Florida law calls for, but it seems odd that you would get coverage without ever having to pay for it. It's odd, but it's pretty much nationwide law. The cases that are cited on it in the briefs... Well, the prime never knew about the car with regard to Capali. That's a misstatement of facts. Okay. When did Prime know that the car was being covered by Capali's policy? Prime's brief admits it was told on October 4th via change request 5 to add the 3985 Toyota to the policy. I understand that, and they set it out. 5 was issued... Was it issued by Prime? Prime never issued an endorsement 5. Instead, what... No, I don't mean an endorsement. They got the message about an endorsement 5, though. They got a notice to add the car on October 4th. The accident didn't happen until six weeks later. They got notice actually five days after Capali bought the car within the 30-day window, well within the 30-day window, to add the vehicle to the car. They admit that in their response to the jurisdictional question. They admit that in their initial brief. It's not until their reply brief that they start saying, oh, we didn't get notice because instead of following the policy and giving coverage, we tried to negotiate a new contract instead of adhering to the contract that was already issued. That first notice that you were talking about, that came from Capali directly or through Brown? It came through Brown and that notice is sufficient under Florida law, under the Capali, excuse me, under the Rabati case he cited. That's a Florida case, one of the few Florida cases cited in the briefs. In that case, it was identical type situation. There was a policy language where notice had to be given of an after-acquired vehicle within 30 days. The insured didn't give any notice. You know who gave the notice? The notice was given by the insured's attorneys five days after they acquired the car in the form of a demand letter for damages because the car had been wrecked within that five-day period and the court in Rabati said a demand letter from the attorney for damages out of the car wreck is sufficient notice that the car has been added to the policy with no payment. In your view of the factual record, what did Prime do when it received that notice? Well, what did Prime do? Prime sent out a Quote 5 that said it wasn't going to cover it unless they signed Quote 5 and paid a premium. Well, you have to go back and look at the policy and say, does the policy say Prime can send a Quote 5 saying they will not give coverage unless the insured signs Quote 5 and pays a premium of an undisclosed date? Okay? The policy doesn't say that at all. What the policy says, the after-acquired provision says the vehicle will be covered if you give notice within 30 days of acquiring car for free. The policy doesn't say that at all. You can add 10 more vehicles to a 10-vehicle policy for free? I want that policy. I'm talking about the after-acquired? Yeah. Let me go to what the policy... Let me go to the... Your policy is for 10 vehicles. It's a corporate policy. You have a lot of vehicles. You have 10 vehicles in the policy. And it has an after-acquired provision like this one. And I get 10 more vehicles. I provide notice to the insurance company, hey, under the after-acquired thing, I want these 10 covered. Yep. What happens? What do I have to fork over? This is what you have to fork over. If the insurance company never sends you a bill, you don't have to fork over a penny under the case law. If the insurance... I'm sorry. I mean to Brown, that Polly's agent. That Polly's agent got a notice of a premium. Did it not? That is correct. And what did it do with it? What did Brown do with it? Brown held it and did not send it to Capali. And the reason Brown held it and did not send it to Capali is because Brown had sent quote, a change request for to Prime that said add two Mercedes to the vehicle.   before quote four came in, Capali told Brown also add the three nine. I know what Capali told Brown, but Brown didn't do it. Correct. So Prime sent endorsement four. Endorsement four said quote four. Quote four said we are going to add three vehicles. We are going to add the two Mercedes and we are going to add a two thousand and nine Toyota Sienna. Capali got that and said that's my three cars. That's exactly what I want. In addition to the hundred and ten thousand dollars I paid for my premium. Here's another two thousand four hundred and change to add three vehicles including a two thousand and nine Toyota Sienna. And both Capali and Brown thought that the Sienna had been added. They did not catch the fact that Prime had made the mistake of putting that vehicle on the change order that Prime now pretends didn't happen and using the wrong VIN zero zero seven nine which was actually already a covered Toyota Sienna on the original declaration schedule. So that's how the confusion got started and that's why Brown mistakenly held quote five. In fact, Brown sent an email back in the record to Prime saying we're confused. What's going on with this quote five? We thought it was already on the policy to which Prime never responds.  In your view of the record, Capali made a payment for the three additional vehicles? Oh, it's very clear. Quote five. Quote four says to add three vehicles. Endorsement four says we are adding three vehicles. And it gives an amount to pay additional premium? Yes, it does. What did Capali do with that? It paid the premium? It paid it. All of the premium notices that Capali got, it paid indisputably. We've already agreed that Brown didn't send Capali something. What was that? That was quote five. What did it ask Capali to do? It asked Capali to sign quote five and pay an additional $2,300. That didn't occur,  That did not occur. Absolutely not. Whose fault was it that it didn't occur? I would say that was a combination of Whose fault who had the responsibility to send that quote? Who had the responsibility to send the quote to Capali? Both Brown  It had to get the money. Both Brown and Prime. Prime had a duty to Capali? Certainly. They made an offer. They made an offer to cover the vehicle. That issue is addressed in the case law as well cited in this that adding an after acquired vehicle is done under the existing policy. It is not a new contract. It is not a new offer. It is not a new acceptance. Prime can't change the terms of the insurance policy they issued by trying to issue a conflicting quote. But they can require more money to be paid. Absolutely. But they have to do it under their policy. And I didn't get to what their policy states. Okay? Their policy in the premium section which is a common language section in the policy in section six. The only place where it says where they get premium is very clear. It's titled premium audit and it says that the  will pay the estimated premium for the coverage over the entire policy at policy inception to get the policy issued. There's no dispute that Prime did that. Excuse me. That Capali did that. Okay? Then it also says that you're over your time but I'm going to give you one more minute to wrap up.  The policy also says that at the end of the policy Prime has to do an audit and determine if the actual exposures meaning vehicles drop off, vehicles add on through the after acquired clause, they do a premium audit and if the actual exposure is less than the initial deposit they have to give a refund and if it is more than that then they have to send Capali a bill at the end of the policy. They don't get to do a quote five and change the terms of their policy. So the case law is very clear that there's basically five cases that you don't get to do    if the actual exposures meaning vehicles drop off, vehicles add      they do an audit and determine if the actual exposure is less than the  deposit they have to give a  So that's                     they have    The actual findings by the district court. The district court looks to the plain language of the policy. There are two provisions to extend coverage. One, that all of the  Capali owned were insured by prime that was undisputed at summary judgment and two, that a request was made to add the vehicle within the 30 days. The  court notes on page 23 of its order that Capali did in fact notify prime that it wanted to cover the 3985 Toyota within 30 days and Capali actually admits that it was an initial request. Then prime later tries to change the terms of the policy and require the quote to be returned as well as the premium. Now, looking at the plain language I don't understand the practical significance of that. In other words, under the after the same  Capali can ask that an additional vehicle that it obtained later be covered under the same policy,  can also ask, I mean, prime can then also ask Capali to pay a little bit more for that additional vehicle. But what's the point? You've got a Mercedes now it's going to cost you a little more to cover that Mercedes along with your ten other vehicles. It's precisely the point. The quote's  Once prime received notice under the district court's  under the plain language of the insurance contract, there was no additional vehicle       So that's the point. The question is what's the point? The question is what's the point? The question is what's the point? The question is what's    question is            So if there were three,  different cars added maybe some were removed two months later. When can  get paid and what gives them the right to ask for the pay? The insurance contract certainly discusses  So under that plain language they're entitled to a premium. When was Prime entitled to obtain a premium for this car, for the Toyota? And what was the term of the contract that let them get the money?  the audit provision,  could conduct an audit and then fill at the end of the policy term. Okay, so there were free coverage until the end of the term? I wouldn't say it's free, it's a contractual requirement and this is the way they shifted. When was the end of the term? January of 2020. In 2020? And this took place in 2019? In the accident was December of 2019 and the vehicle was added in  When was the audit? They never did an audit. Never did later?  So what prime is saying today, nor did they cancel it. One other point on the cancellation but I'll get there in just one moment. The point is what would happen when they did the audit to get the money? They would need to send an invoice or a refund depending on what the vehicle would be paid for at the time of the audit. Can you say yes or no? Yes. At the time of the audit.  If I may for 30 seconds on the cancellation piece. Reading the  court's  because both conditions were met to extend coverage under the after-acquired auto provision, there was automatic coverage. If prime determined it wanted its payment prior to the audit which is what we're hearing from quote 4 and decided it was not going to provide the automatic coverage under the plain terms of the insurance contract, under Florida law it's required to send a notice of cancellation. This court addressed that in the key case and the reason that's important is so that the insured knows oh there's a premium payment that the carrier believes I am due and I can make sure I pay that so coverage doesn't lapse. And that did not happen here. So the district court is saying prime you extended automatic coverage and this  is the     the audit under the terms of the policy. Thank you. Thank you very much Mr.  When was the audit? Does the record tell us? Since the audit argument was raised short answer we don't know it's not in the record. I assume the audit argument was made to the district judge. It was not your honor. When was it made? First time was on appeal number one and we addressed the audit argument in our papers in the reply brief. Was there a demand made by prime at the time of the audit for that premium? There's nothing in the record addressing the audit because it wasn't covered. Yes. Right. If you would have done an audit you're saying the audit matter wasn't addressed in the record because it wasn't raised. Prime would have done an audit regardless of whether or not we had the controversy of the case because there might have been other vehicles added that there were no accidents with or there might have been vehicles dropped and at the end of the policy period you had to adjust the policy premium. The audit is for covered autos so if there was a covered auto that no premium had been paid and I'll give you an example. Let's say that the 3985 Toyota was purchased ten days before the policy and there was no premium paid, the audit would pick that up. The purpose of the audit is not to provide coverage for a vehicle that was either not scheduled or was still within that 30-day grace period. They say that you received notice through Brown of Capali's desire to provide   3985 Toyota. Is that correct? That's partially correct and incorrect. The only and this is where the policy language is important. I'm not worried about policy language right now. I'm trying to figure out the chronology. You tell me what did Prime receive from Brown after it issued endorsement for and quoted for received an email saying we've changed our mind, instead of putting the 3985 Toyota on the progressive policy, we now want to put it on the prime policy. In response, that is when the quote, the    3985        sent that information to Prime about the  policy? In the record, the initial request was we're going to put another coverage. The 3985 would have been covered under a  policy. It wasn't a policy. Going back to your point, Judge Joe Flatt, and going back to the Davis case, the condition preceding is you tell us within 30 days they did, in other words, they said what happened is not that they told Prime, Prime got that quote and said you tell us within 30 days after you acquire it that you want us to cover it for that coverage. That never happened here. I'm really confused now. I'm not asking about the legal effect. I'm not asking about who wins or loses. I'm not asking about any of that. I just want factual chronology. I can do that. Prime through Brown received an email that Capali wanted this Toyota covered as an after acquired vehicle. Yes or no? Yes. Okay. So you got notice of their desire, of Capali's desire for this car to be covered under your policy. Tell me what the email says. I don't want to fight with you,  Kammer, but tell me what the email says. The email said that they changed their mind and wanted to add the 3985 from Progressive to Prime.  paraphrasing. That's not notice to you that they wanted to do it? I'm not saying you lose because of that. I just want to know, did Prime receive notice of Capali's desire to add this Toyota to the current policy? They received it, but because Brown never sent the quote. I know. I know that's your argument. I'm not fighting you on that. You guys really have to just focus. You guys know this case much better than we do. We're trying to figure out from the outside in what the chronology is so we can wrap our heads around the legal issues. It's just a simple question. The answer is yes. Whatever its legal effect or whatever its result for this case, you received some notice within the 30-day period that Capali wanted the vehicle added to your policy. That is correct. Okay. But again, for the reasons I articulated, that's not case dispositive. I understand that. Mr. Cameron. Yes. My understanding is when Brown first sought coverage for the Toyota, it dealt with Progressive. That is correct.  coverage for the Toyota under coverage of Progressive. Is that right? Right. The initial request was through Progressive and then there was a change. Brown to Progressive. Prime wouldn't know anything about that. How would Prime know that Brown had this Toyota and was going to have it insured by Progressive? How would Brown know that? Excuse me. Prime. I believe the record shows that there was a subsequent communication where there was a change. No, that's not   You have a general agent who writes coverage for his clients in all kinds of companies.  They got this. So we have two separate transactions. We have two Mercedes. Correct. Okay. And that goes from Brown to Prime. Correct. And two Mercedes are insured. They're added to the policy as scheduled autos. Correct. And were paid for, I  The record is clear. They were paid for. All right. Entirely different, let's say at a different point in time, they acquired the Toyota. It is acquired by Napali. But the question is who's going to cover it? And  whether instructed by Napali or not, decided to put it with Progressive. And it was covered by Progressive. If under that factual pattern, that's correct. All right. Then at some point in time, Brown tells Prime about this car. It tells Prime in effect that it's been covered by Progressive. So they would cancel the Progressive policy, I suppose, or coverage. Put it in your, that was the gist of what was communicated. Is that not right? Except that factually, as you delicately tried to put it in responding to Judge Schoflat's question, there was no Progressive coverage that was provided     what we've spent my time on my rebuttal is not about what the key issue here is, which the court has recognized. And here's where the confusion is, is that during the 30-day grace period, there's coverage as long as notice is provided within that 30 days. And with respect to Mr.  there is no court anywhere in the country that has ever extended coverage under an after-acquired provision after 30 days where no premium was paid. And what I didn't hear from my opponents is anything about the case law, which I referred to in the brief, is that we're under the time for premium. And again, counsel conceded under the policy a premium had to be charged. He conceded that in argument. It had to be paid in a reasonable period of  What was the amount that you demanded for the coverage of that  The coverage for the 3985 Toyota and this is the record at 119 was $2,391. And I want to say something. That's a yearly premium figure? It's a pro rata based upon the year. So in discovery, what was done is when you add a vehicle to the policy, they initially look at what it would be for the year. And since it was only going to be a part of the year. And again, the record is very clear. There was no mistake here. The district court got this right. First of all, there was no confusion going into the record. Thank you for the  question.  want to say   in the email exchange after quote four was received, Carrera sent an email to Ms. Buck at prime stating we received the endorsement talking about endorsement four with a Toyota already listed there. With regard to the premium, it's in the record that endorsement four only charged the premium for the Mercedes. There is no... Why was the other Toyota with the wrong VIN number listed in that quote? The wrong VIN number, are you talking about the 079 Toyota? I don't know the number. The 079 Toyota was initially, and no one knows why, the 079 Toyota was already on the policy and for reasons, they wanted to move it from vehicle two or vehicle three to vehicle one, but in the testimony of prime and the district court got this correct, even though the 079 by mistake was listed again, the premium had already been paid for that 079. You were charging for it. No. You just put it in there for free. The record shows that. Prime put that vehicle in there by mistake, by somebody's  Correct. You're not charging for it? The premium worksheet was for the Mercedes, not for the record evidence.  evidence is the premium worksheet. Again, the 079 was a scheduled auto. They just wanted to move it from three to one, but Judge Jordan, the undisputed evidence, keep in mind these are two different premium amounts. The undisputed evidence is the premium for the 3985 Toyota was not charged  that. The undisputed       Toyota was not charged for that. The undisputed evidence  premium for the 3985  was not   The undisputed evidence              judgment be entered in prime because no premium was paid and you do not get coverage for free. Thank you. Thank you all very much. We're in recess for today.